No. 27,528.

THE STATE OF KANSAS, *Appellee*, v. W. F. FADLER, *Appellant*.

(271 Pac. 283.)

Opinion filed November 3, 1928.

*John J. Riling* and *Edward T. Riling*, both of Lawrence, for the appellant.

*William A. Smith*, attorney-general, *Roland Boynton*, assistant attorney-general, *George K. Melvin*, county attorney, and *R. E. Melvin*, of Lawrence, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant was convicted of robbing the Lecompton State Bank and appeals.

The conviction appears to have been secured largely through the testimony of one Byron Lacy, who at the time of the trial in the instant case was an inmate of the state industrial reformatory at Hutchinson, serving sentence for car theft. The defendant's principal contention is that the evidence was insufficient to sustain the conviction.

Lacy testified substantially to the effect that he had known the defendant some three weeks before the robbery, which occurred on August 18, 1925; that on Saturday night before the robbery the defendant suggested to him that they meet at a small park in the southwest part of Topeka the following Tuesday morning; that de-

fendant had a job to be done in Lecompton; that he met defendant in the park on Tuesday morning about 10:30, got into defendant's car with defendant and one Hearst, a stranger to Lacy, and drove to Lecompton; that the defendant told the witness, Lacy, he was to follow Hearst; that he did so; that he and Hearst each with a loaded revolver entered the bank, robbed it of some $1,400 while defendant remained in the automobile close by; that after the robbery the three drove away from Lecompton, and that he (Lacy) got seventy dollars of the money stolen from the bank.

The defendant argues that the testimony of Lacy was so unreasonable as not to be believed; that Lacy testified the defendant never suggested during the trip to Lecompton that they intended to rob the bank; that the question was not discussed; that after arriving at Lecompton, when the car was parked about a quarter of a block from the bank, no suggestion was made that the bank was to be robbed, but only that Lacy was to follow Hearst.

The testimony of Lacy was fully corroborated by that of other witnesses. For instance, Sarah Slavens, a fifteen-year-old girl who lived in Lecompton, testified that she remembered when the bank was robbed, saw a big blue touring car about two and a half blocks from the bank, driving about five miles an hour, and that she saw both Lacy and the defendant in the car; that there were three men in the car.

Margaret Baughman, another girl, with Sarah Slavens, also saw a blue touring car coming from the south; saw three men in it; that Lacy and the defendant were in the car. She was not as positive in her identification of defendant as Miss Slavens, but thought he was the one.

Charles Shaw testified that he saw a blue Packard touring car the morning the bank was robbed about fifty feet northwest of the bank; that a man was sitting behind the steering wheel and that he thought the defendant was that man.

Fritz Hill remembered that the bank was robbed about eleven o'clock; saw the blue Packard car; passed it several times; one man was in it; looked very much like defendant.

George Haynes, who is a blacksmith at Lecompton, saw a blue Packard car on the day of the robbery; identified Hearst from a picture, as being one of the men in the party; identified Lacy and believed that the defendant was one of the men in the car.

We are of opinion that the evidence was ample to sustain the conclusion of the jury that the defendant was one of the party who robbed the bank. It was, of course, essentially a question of fact to be decided by the jury.

Complaint is made of misconduct by the county attorney in the argument to the jury, in that he directed attention to the fact that defendant's wife was in court and did not take the stand and testify to certain things testified to by the defendant. On the part of the state it is contended that the defendant took no exception to the remark at the time it was made, and did not call the trial court's attention thereto until the filing of a motion for a new trial. Also, that no showing of prejudice resulting from the alleged misconduct was made. It has been held:

"Misconduct of counsel in argument to the jury is not available as ground for reversal where no objection was made to it and no request was made for a ruling thereon, or for an instruction to the jury concerning it." (*State v. Vandruff,* 125 Kan. 496, syl. ¶ 4, 264 Pac. 1060.)

It has also been held that although it was an error for the county attorney to refer to the fact that defendant's wife did not testify, that before a judgment of conviction would be reversed it must affirmatively appear that some substantial right of defendant was affected by the error. (See *State v. Peterson,* 102 Kan. 900, 171 Pac. 1153; *State v. Owen,* 124 Kan. 533, 261 Pac. 600; *State v. Messmer,* 123 Kan. 201, 254 Pac. 378; *State v. Ragan,* 123 Kan. 399, 256 Pac. 169.)

The judgment is affirmed.